CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
NOV 20 2012
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| MICHELLE L. CLARK, | ) | CASE NO. 5:11CV00139 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By:  B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's November 23 and November 25, 2009 protectively-filed applications for a period of disability and disability insurance benefits and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423, and 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision dated May 27, 2011, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since September 1, 2008, her alleged date of disability onset.[1][2] (R. 21-22.) The Law Judge determined plaintiff's diverticulitis, pseudo-

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be

1

seizures/seizures, anemia, status post right wrist fracture in January 2010, and recently diagnosed systemic lupus erythematosus, considered in combination, were severe impairments. (R. 22.) He found that plaintiff's history of Crohn's disease, gastroesophageal reflux disease, hypertension, chronic obstructive pulmonary disease, history of gynecological cancer, and leukopenia were not severe impairments. (R. 22.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 22-24.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform a range of light work, with the limitations that she could push and pull with her left hand only occasionally; could not climb ladders, ropes or scaffolds; could climb ramps and stairs only occasionally; and needed to avoid concentrated exposure to workplace hazards, such as moving machine parts or unprotected heights.[3] (R. 24-57.)

The Law Judge further relied on portions of the testimony of Gerald K. Wells, Ph.D, CRC, a vocational expert ("VE"), which was in response to questions premised on the Law Judge's RFC finding. (R. 57, 73-80.) Based on this testimony, the Law Judge determined that plaintiff was capable of performing her past relevant work as a front desk clerk, time-share sales agent, security guard, fast food worker, and sales clerk, as they did not require the performance of work-related activities precluded by what he determined to be plaintiff's RFC. (R. 57.) Accordingly, the Law Judge found that plaintiff was not disabled.

---

expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, which is March 31, 2014. *See* 20 C.F.R. § 404.131(a); (R. 21, 295.)

[2] The Law Judge found that plaintiff had worked since her disability onset date. He pointed out that plaintiff had earnings in 2009 and 2010 and worked at Busch Gardens as a chef a year before the hearing, i.e. in March 2010. (R. 21-22.) He also pointed out that plaintiff's testimony, earnings record, and disability report are very inconsistent regarding plaintiff's work history. (R. 21-22.)

[3] Light work is defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) as involving lifting no more than 20 pounds occasionally and 10 pounds frequently, standing or walking 6 hours in an 8-hour workday, and sitting about 6 hours in an 8-hour workday.

2

Plaintiff appealed the Law Judge's May 27, 2011 decision to the Appeals Council. (R. 4-14.) Plaintiff submitted additional evidence on administrative appeal.[4] Though it considered the additional evidence, the Appeals Council found no basis to review the Law Judge's decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 4-5.) This action ensued, and cross motions for summary judgment were filed together with supporting briefs.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." (*Id.* at 642.) When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff challenges the final decision on several grounds. First, plaintiff argues that the Law Judge failed to properly evaluate her credibility. (Dkt. No. 10, at 22-25.) Second, she argues that the Law Judge failed to properly weigh the medical opinions of record. (*Id.* at 14-22.) Finally, plaintiff argues that the Law Judge relied upon "flawed" vocational expert testimony, in that it was in response to

---

[4] The additional evidence was a March 17, 2010 "Seizures: Impairment Questionnaire" filled out by Patricia Mayes, M.D, plaintiff's treating neurologist. (R. 1140-1145.)

3

the Law Judge's RFC finding, which plaintiff asserts was itself inaccurate. (*Id.* at 25-26.) The undersigned will consider these arguments below.

Plaintiff challenges what she characterizes as the Law Judge's "negative credibility determination." (Dkt. No. 10, at 22-25.) She argues that her testimony about her symptoms, limitations, daily activities, and lack of improvement with treatment is entirely consistent with the medical record. (*Id.* at 25.) She asserts that the Law Judge erred by failing to credit her testimony and not giving sufficient reason for rejecting it. (*Id.*)

A Law Judge must consider whether there is objective medical evidence that plaintiff suffers an underlying impairment which could reasonably be expected to cause both the severity and persistence of the subjective complaints alleged by the claimant. *Craig v. Chater*, 76 F.3d 585, 592-596 (4th Cir. 1996); 20 C.F.R. § 404.1529(a)-(c) (2011). If so, the Law Judge then must assess the credibility of claimant's statements about the severity and limiting effects experienced by those impairments. (*Id.*) The ultimate determination should reflect consideration of the entire record. (*Id.*); SSR 96-7p, 1996 WL 374186 (July 2, 1996).

Here, the Law Judge found that, while plaintiff's medically determinable impairments reasonably could be expected to produce some of plaintiff's symptoms, "the claimant's contentions as they relate to the intensity, persistence and limiting effects of those symptoms are not entirely credible in light of the longitudinal record as a whole." (R. 30.) He pointed out that plaintiff had engaged in work and work-like activities into 2010 and determined that her treatment had been generally routine and conservative, with the majority of her impairments being "transient or episodic." (R. 52.) He found that the limiting effects of plaintiff's impairments were not as severe as she alleged and did not prevent her from working. (R. 54.) Finally, the Law Judge pointed out that plaintiff had made several inconsistent statements and contradicted the record evidence, both of which undermined her credibility. (R. 54-55.)

The record, in fact, shows that plaintiff made several statements that were inconsistent with other evidence she presented and portions of the record. Moreover, there is other substantial evidence supporting the Law Judge's finding that she is not as limited as she alleges. First, plaintiff testified that

4

she weighed 148 pounds and had lost over 100 pounds since September 2008 and 60 pounds since July 2010. (R. 91-93.) However, the record shows that plaintiff weighed 167.5 pounds in June 2008 (R. 760.), 153 pounds in December 2008 (R. 524.), 155 pounds in September 2009 (R. 570.), 155 pounds in March 2010 (R. 794.), and 151 pounds in March 2011 (R. 1118.) Plaintiff did weigh as much as 201 pounds in early 2007 (R. 687, 689.) and as little as 147 pounds in January 2011. (R. 911.) Irrespective of how the court may assess these inconsistencies in her historical account of weight loss, they could be considered by the Law Judge in assigning the weight to be given her testimony, and provide substantial evidentiary support for his conclusion that plaintiff's historical version of weight gain and loss was exaggerated.

Plaintiff further testified that she had stopped smoking in her early twenties and had never been more than an occasional social drinker. (R. 111-113.) However, plaintiff told the medical personnel at the Williamsburg Neurology and Sleep Disorders Center that she stopped smoking in 2004, when she was 39 years old. (R. 678, 797.) At another point, she related that she stopped smoking 17 years prior, when she was 29 years old. (R. 682, 817-818.) Furthermore, the record indicates that plaintiff has a history of alcohol abuse (R. 672-674, 676, 679.), and she has twice been admitted to the emergency room while legally intoxicated. (R. 500, 540-541.)

Turning to plaintiff's pseudo-seizure/seizure disorder, she testified that she had a serious seizure while in hospital as a result of a strobe light test. (R. 80.) Additionally, she testified that she had suffered three seizures in the week prior to the hearing, though admitting there were some weeks when she didn't have any, and that she believed she was suffering memory issues as a result of her seizures. (R. 80, 87.) However, the photic stimulation tests of record revealed no abnormalities. (R. 584, 675, 680.) Though she experienced a seizure while receiving an EEG in hospital in September 2009, her doctors opined the seizure was caused by diverticulitis which interfered with the absorption of her anti-seizure medication, and the EEG and photic stimulation test were both negative. (R. 572-573, 584, 797.) The record also shows that plaintiff's seizures generally have been very occasional, with only two seizures being reported over a six month period from September 2009 to March 2010, one of which was the result of an

5

exacerbation of her diverticulitis and the other resulting from taking generic anti-seizure medication. (R. 794-799.) Plaintiff's treating neurologist, Patricia Mays, M.D., also noted that plaintiff's recent and remote memory were intact. (R. 795, 798.) Moreover, plaintiff did not seek treatment for her seizure disorder from September 2008 through September 2009, or at any other time since March 2010.[5]

Additionally, plaintiff testified that her anemia and leukopenia were debilitating conditions. (R. 81-82.) She testified that she received blood transfusions at least every 3 months, did not have any energy, that "I can bleed from my eyes and my ears," and that her condition was so severe that she "didn't have enough blood to go to my heart." (R. 81-82.) However, the medical reports of record have described plaintiff's leukopenia and anemia as "mild." (R. 707-716, 1000-1001, 1018-1019.) While she has received blood transfusions, the record evidence does not support their alleged frequency. A treatment note from August 2010 revealed that plaintiff had not received or needed a transfusion during the preceding 8 months. (R. 1018.) It appears that the only transfusions clearly shown by the medical records were in September 2009 and January 2011. (R. 572-576, 713, 944-945.) The September record also revealed no signs of bleeding. (R. 573, 576.)

The Law Judge also relied on plaintiff's work history and educational background to assess the weight he gave to her testimony. (R. 21-22, 54-55.) The record shows that plaintiff continued to work after her alleged disability onset date. According to her own testimony and an earnings report, plaintiff worked at Busch Gardens as a cook through 2010. (R. 96-98, 299, 331-332.) Though her work was on a part time basis which did not rise to the level of substantial gainful activity, it fell in the light to medium categories and was proper for the Law Judge to consider in determining her functional capacity at levels greater than her testimony otherwise would allow.[6] (R. 96-98, 116, 299, 331-332.) As for plaintiff's education, she claimed at one point she had earned her GED in 1985, but she later testified that she had

---

[5] Plaintiff was admitted to the emergency room in March 2009 as a result of an overdose. She displayed symptoms that resembled those of a seizure, but they were determined to be "purposeful," and ceased after she was informed by medical personnel that no medication was going to be prescribed and told to stop. (R. 547, 554.) Plaintiff also was examined in October 2010 to determine whether her diabetes might be causing or contributing to her seizures. Ultimately, it was found that plaintiff's diabetes was well controlled by medication. (R. 819.)

[6] *See* 20 CFR § 404.1571.

6

Case 5:11-cv-00139-MFU-BWC   Document 19   Filed 11/20/12   Page 6 of 16   Pageid#: 1281

yet to acquire it. (R. 96, 375.) Ultimately, credibility determinations are the domain of the Law Judge,[7] and it is the undersigned's view that there were sufficient inconsistencies and conflicts between her testimony and claims, on the one hand, and the record evidence, on the other, to substantially support the Law Judge's finding that plaintiff was not entirely credible in relating the severity, intensity, and persistence of her impairments. *See* SSR 96-7p (the Commissioner may consider all relevant evidence of record in making a credibility determination).

By the same token, the undersigned has more closely examined aspects of the Law Judge's determination of plaintiff's RFC. He found that plaintiff's seizure or pseudo-seizure disorder was not as limiting as she claimed because it was "very intermittent and generally under control, and she has not followed with a neurologist since December 2009." (R. 54.) However, as the Law Judge acknowledged in his summary of the evidence, plaintiff underwent follow-up examinations in March 2010 with a neurologist, Patricia Mays, M.D. (R. 41, 794.) The record also reflects that Dr. Mays was managing plaintiff's treatment in November 2010. (R. 851-852.) Furthermore, in October 2010, Augusta Health Diabetes and Endocrinology examined plaintiff to determine what effects her diabetes might be having on her seizure disorder. (R. 817.)

Despite this more longitudinal view of her impairment, it is the undersigned's view that these facts do not undermine the Law Judge's conclusions that plaintiff's seizures were very intermittent and generally under control during the relevant time. The record clearly shows that plaintiff's treatment providers have debated her seizures. Most have found generally normal EEG and MRI results, some have questioned whether she suffers a seizure disorder of any type, while others believe they are symptoms of one of plaintiff's other conditions or produced by the treatments she has received for them. (R. 573, 584-585, 663-664, 675, 679-680, 794, 819.) While the undersigned and the court might not discredit plaintiff as much as the Law Judge, the reports of her March 2009 hospitalization damage her credibility. The treatment providers opined that plaintiff's seizure symptoms were purposeful, pointing out that her

---

[7] *See Shively v. Heckler,* 739 F.2d 987, 989–90 (4th Cir.1984).

7

symptoms ceased when she was denied prescriptive medication and told to stop. (R. 547, 554.) Accordingly, the Law Judge's findings regarding plaintiff's pseudo-seizure/seizure disorder are supported by substantial evidence.

The Law Judge's consideration of plaintiff's diverticulitis also invites closer inspection. The Law Judge determined that plaintiff's diverticulitis had been "quiescent for the most part, other than her hospitalization from October 26 to November 12, 2009, and there has been no evidence of Crohn's disease." (R. 54.) However, the Law Judge previously acknowledged that plaintiff also was hospitalized for diverticulitis from September 8 to September 22, 2009. (R. 36, 569-577.) Thereafter, plaintiff reported to the emergency room in December 2009 and July 2010 for treatment related to diverticulitis.[8] (R. 626-640, 1027-1030.)

However, other than these episodes which the Law Judge failed to acknowledge, plaintiff's gastrointestinal status on physical examination essentially was normal. An examination of the medical record reveals that a December 2008 report noted that plaintiff complained she experienced diarrhea "all the time," but indicated no pain, nausea, or other symptoms. (R. 527.) A June 2009 report indicated that plaintiff suffered no gastrointestinal symptoms. (R. 559.) Reports and imaging from January 2010 revealed complaints that plaintiff continued to experience nausea and pain and noted there was "evidence of diffuse colonic diverticulosis without evidence of acute diverticulitis." (R. 719-720, 783-784.) Plaintiff's IV antibiotics were discontinued in February 2010 and do appear to have been prescribed again. (R. 814.) Tests performed in March 2010 showed no significant inflammation or abnormalities and diagnosed plaintiff with mild gastritis. (R. 694-706, 1068-1072.) Though plaintiff continued to suffer nausea, she did not display acute symptoms of diverticulitis or seek treatment besides the July 2010 emergency room visit. (R. 1027-1034.) Notably, all gastrointestinal examination findings in August 2010, January 2011, and March 2011 were normal, other than mild nausea. (R. 948, 1018, 1100-1101.) Thus, the Law Judge's severity findings in these respects are supported by substantial evidence.

---

[8] However, in the July 2010 visit, plaintiff left before receiving treatment. (R. 1029.)

The undersigned also has examined the Law Judge's analysis of plaintiff's left wrist impairment and of her claim that she suffered Reflex Sympathetic Dystrophy ("RSD"). The Law Judge acknowledged that plaintiff fractured her left wrist in January 2010, but pointed out that she was cleared to return to light duty with lifting restrictions in May 2010, and noted that the fracture had healed. (R. 54.) He also found that the diagnoses of RSD were not supported by the medical record. (R. 54.) Once again, while the Law Judge acknowledged earlier in his decision that plaintiff had told Nurse Welk that she was being treated at UVA for a tumor in her left wrist, he did not specifically determine how this possible diagnosis affected his RFC determination. (R. 48-49, 54.)

There is evidence in the record that plaintiff has a lytic lesion in her left wrist. (R. 843, 848, 1004.) However, there are no treatment notes from UVA in the record, nor is there any evidence that this impairment causes plaintiff any limitations beyond those considered by the Law Judge in evaluating her wrist impairment. The Law Judge correctly found she had been cleared to return to work, with the limitation that she not lift more than 2 to 5 pounds. (R. 801.) This limitation essentially restricted her to sedentary work.[9] (R. 119.) Plaintiff's orthopedist, John McCarthy, III, M.D., also opined that plaintiff did not present overt signs of RSD, though she did have mild dystrophy with pain, stiffness, limited extension, and abnormal posturing of the left upper extremity. (R. 801.) Dr. McCarthy also reported that plaintiff's treating neurologist had concluded that plaintiff did not suffer RSD.[10] (R. 808.) In April 2010, Robert Campolattaro, M.D., indicated that plaintiff had mild to moderate residual stiffness in her wrist, minimal stiffness in her fingers, and no limitations in wrist range of motion. (R. 806.) Dr. McCarthy also found that plaintiff continued to improve in April and May 2010. (R. 801, 803.) Oddly, he prescribed that plaintiff continue treatment for RSD, and he indicated that he would reassess her condition if her employer would not allow her to return with lifting limitations. (R. 801.) Dr. Campolattaro also advised

---

[9] Sedentary work is defined in 20 C.F.R. § 404.1567(a) and 20 C.F.R. § 416.967(a) as involving lifting no more than 10 pounds occasionally and less than 10 pounds frequently, standing or walking 2 hours in an 8-hour workday, and sitting about 6 hours in an 8-hour workday.

[10] Dr. McCarthy may be referring to Dr. Mays' March 26, 2010 examination. In that examination, Dr. Mays found that plaintiff had "sensory increase paresthesia on teh (sic) left forearm," tenderness, and limitations in extension, but otherwise noted no abnormalities. (R. 794-796.)

9

that plaintiff seek formal hand therapy and pain management. (R. 806.) There is no evidence that plaintiff ever returned to either physician.

Though some treatment notes refer to plaintiff receiving pain management therapy and as well as several stellate ganglion blocks in her wrist, no treatment reports in the record for her wrist and hand pain appear until October 2010. (R. 863.) At that point, plaintiff was referred to the Balint Pain Management Center who related her contention that she had been experiencing persistent pain, dynesthesias, and reduced range of motion in her left forearm and wrist for a period greater than eight months. (R. 865.) Balint personnel acknowledged a historical diagnosis of chronic RSD and frequently found plaintiff to have reduced range of motion and tenderness in her left wrist with bilateral finger stiffness. (R. 844-845, 847-848, 855-856, 858-859, 865.) Plaintiff reported that her pain medications and stellate ganglion blocks were helping with function and overall pain control. (R. 843, 845, 847, 856, 865.) Robert Kane, MSPT, plaintiff's physical therapist, also found that plaintiff had limitations in range of motion, flexion, with severe pain. (R. 867.)

There is no question plaintiff had experienced limitations and continued pain as the result of her wrist impairment, though there is debate in the medical record over whether she actually suffers RSD. Ultimately, it was the duty of the Law Judge to resolve inconsistencies in the record,[11] and there is substantial evidence supporting his finding that plaintiff is not disabled by her wrist impairment, either singularly or in combination with her other impairments, and can work with some limitations.[12] (R. 24.)

An additional issue arises here concerning whether Law Judge's determinations that plaintiff's diabetes was not a severe impairment, did not meet the listings and, thus, did not impact plaintiff's RFC, is supported by substantial evidence.[13] In the main, plaintiff's diabetes has been found either to be stable

---

[11] See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

[12] The VE also testified that plaintiff was capable of returning to past relevant work with a lifting limitation of 5 pounds. (R. 119.) However, he also testified that if plaintiff did not have good use of both hands, she would be incapable of performing sedentary work. (R. 119.) The Law Judge's finding that plaintiff is not precluded from working as a result of her wrist impairment is supported by substantial evidence.

[13] Notably, the Law Judge did not even refer to diabetes in his list of non-severe impairments. (R. 22.) However, he did discuss some of plaintiff's treatment for diabetes. (R. 47.)

or controlled by medication. This is exactly what was found during her September 2009 hospitalization, and on examination in October 2010. (R. 573, 819.) This is important because conditions or symptoms that are controlled by medication are not disabling.[14] Moreover, plaintiff has not pointed to evidence of a single limitation resulting from her diabetes that was not addressed in the Law Judge's determination of her RFC. If there was any error in the Law Judge's failure to articulate limitations arising from plaintiff's diabetes, this error is harmless. *See Kersey v. Astrue*, 614 F.Supp.2d 679, 696 (W.D.Va. 2009) (errors are harmless in social security cases when a different decision would not have been reached absent the error).

In summary, the Law Judge's findings regarding the severity of plaintiff's condition and her credibility in that regard are supported by substantial evidence.[15] Assuming for argument's sake that the Law Judge fell short in portions of his analysis, the substantial evidence still supports his ultimate findings in all the aspects above.

Plaintiff also challenges the weight the Law Judge assigned to various medical opinions of record. (Dkt. No. 10, at 14-22.) She argues that the opinions of her treatment providers, Debra Welk, FNPBC; John Syptak, M.D.; and Daniel El-Bogadadi, M.D., should have been given greater weight. (*Id.* at 15-21.) Furthermore, she argues that the opinion of Patricia Mays, M.D., which plaintiff submitted for the first time before the Appeals Council, is new, material, relates to the relevant period of this case, and itself constitutes good cause to remand for further proceedings. (*Id.* at 21-22.)

The opinions of treating sources are entitled to controlling weight, if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence of record. 20 C.F.R. § 416.927(c) (2012); *Craig v. Chater*, 76 F.3d 585, 590 (4th

---

[14] *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

[15] Plaintiff also apparently began physical therapy for trochanteric bursitis and to determine whether problems with her balance and gait would require her to use a cane. (R. 1083, 1086.) These records reveal that plaintiff had reduced flexibility and muscle strength, abnormal gait, and significant pain. (R. 1083-1091.) However, multiple other records indicate that plaintiff had no or minimal deficits in these areas. (R. 632, 664, 847, 855, 858.) X-rays of plaintiff's hip have also revealed no abnormalities. (R. 1003.) The Law Judge did not explicitly indicate how these findings affected his RFC determination. However, plaintiff has not indicated what additional limitations she may have as a result of this alleged impairment or whether these limitations are addressed by the Law Judge's RFC finding. Accordingly, the undersigned finds that these records do not undermine the substantial evidence in support of the Law Judge's ruling.

11

Cir. 1996). Even if not accorded controlling weight, ordinarily they are to be given more weight than the opinions of non-treating physicians. (*Id.*) The weight given a medical opinion depends on several factors: (1) the length of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the degree of supporting explanations for the opinion; (4) the opinion's consistency with the record; and (5) the specialization of the physician. 20 C.F.R. § 416.927(c) (1)–(6) (2012). Furthermore, a Law Judge must set forth an explanation in the decision why controlling weight was not given a treating source's opinion, and the Law Judge may reject the opinion of a treating source only where there is persuasive contradictory evidence in the record. 20 C.F.R. § 416.927(c)(2) (2012); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

In January 2011, Nurse Welk opined that plaintiff's left arm and wrist pain resulted from RSD, a fractured radius, chronic pain syndrome, and osteopenia and prevented her from performing "any full-time competitive job on a regular basis now or in the future."[16] (R. 900.) Welk believed that plaintiff would be absent from work more than three times a month as a result of her impairments, needed to avoid temperature extremes, and was not capable either of pushing or pulling. (R. 906.) The Law Judge rejected Welk's opinion on several grounds. He pointed out that the issue of whether someone is disabled is a matter reserved to the Commissioner.[17] (R. 55-56.); *See* 20 C.F.R. § 404.1527(d) (2012). He further concluded that Welk's views were not supported by the longitudinal record which showed that her wrist fracture healed without signs of RSD and included an orthopedist's eventual release of plaintiff to return to work.[18] (R. 55)

---

[16] There appear to be two other opinions of record: one from Martha Klinger, CFNP, and another from Edwin Cruz, M.D. (R. 733, 770-772.) Plaintiff does not object to the Law Judge's findings regarding Nurse Klinger's opinion, which are supported by substantial evidence, and it was agreed during the hearing before the Law Judge that Dr. Cruz's opinion did not appear to apply to the case. (R. 55, 72-73.)

[17] While true, this criticism can be raised about essentially any medical opinion in these matters, including those of the state agencies. If medical opinions did not discuss the ultimate issue of disability and the factors that are considered in evaluating a claimant's condition, they would be far less useful.

[18] In his consideration of the opinions of plaintiff's treatment providers, the Law Judge found that because the majority of plaintiff's symptoms were subjective, her treatment providers were required to rely on her credibility in their opinions of her condition. (R. 55.) Because the record showed that plaintiff was "not above exaggeration," he determined that if these treatment providers had been fully

12

To begin, Welk's opinion is not entitled to controlling weight because she is not a medically acceptable source, though as an "other source," her findings concerning the severity of plaintiff's condition were entitled to consideration. 20 C.F.R. § 404.1513(a), (d) (2011); SSR 06–03p, 2006 WL 2329939 (Aug. 9, 2006). In the main, the Law Judge also correctly assessed plaintiff's wrist impairment. As stated before, Dr. McCarthy, plaintiff's treating orthopedic specialist, had considered whether plaintiff suffered RSD but ultimately concluded that she had no overt signs and cleared her to return to work with lifting limitations. (R. 801-815.) He also reported that plaintiff's treating neurologist had concluded that plaintiff did not suffer RSD. (R. 808.) The record appears to indicate that plaintiff did not follow up with either specialist after May 2010. The record also indicates that nerve blocks and pain medications relieved some of her symptoms. (R. 803-04, 860-866.) The Law Judge is charged with resolving inconsistencies in the record and weighing evidence. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). While the undersigned may have given Welk's opinion more weight and given some credence to the diagnosis of RSD, there is substantial evidence supporting the Law Judge's decision not to do so.

The Law Judge next considered the opinion of Dr. Syptak. In January 2011, Dr. Syptak opined that plaintiff was unable to perform full-time competitive work on a sustained basis because of her seizures, diabetes, lupus, Crohn's disease, diverticulitis, and wrist, hip, and arm pain. (R. 875-876.) He found that plaintiff was unable to sit, stand, or walk for a full 8-hour workday; could only occasionally lift or carry five pounds or less; had moderate to marked limitations in her use of both of her arms and hands, and both sets of fingers; and, she would miss at least three days of work a month because of her impairments. (R. 875-882.) The Law Judge was of the view that Dr. Syptak's opinion was not supported by either the longitudinal record or his own treatment notes, which he found routine and conservative, containing unremarkable physical examination findings. (R. 56.) In addition, he found Dr. Syptak's hand-written notes to be "terse" and "very unreadable with minimal, but unremarkable, physical findings. (R. 56, 909-935.) Accordingly, he rejected Dr. Syptak's opinion. (*Id.*)

---

aware of the difficulties with plaintiff's credibility, their opinions would have been impacted. These conclusions have substantial evidentiary support.

13

As said, there is substantial evidence supporting the Law Judge's findings that plaintiff's seizures, diabetes, diverticulitis, and wrist pain are not disabling either individually or in combination. Though plaintiff has a history of Crohn's disease, there is no evidence of the record that she has suffered limitations as a result of the condition during the relevant period of this case.[19] Moreover, the Law Judge is correct in his assessment that Dr. Syptak's examination findings are unremarkable. Plaintiff consistently presented with normal findings on physical examination, and Dr. Syptak frequently indicated that plaintiff had no acute complaints and was doing well. (R. 910-917.) Dr. Syptak also consistently diagnosed plaintiff with chronic pain, diabetes, anemia, leukopenia, and cholesterol problems, but he never identified any limitations resulting from these conditions and, notably, did not mention plaintiff's anemia, leukopenia, or cholesterol as conditions contributing to plaintiff's functioning. (R. 875-876, 910-917.) Accordingly, there is substantial evidence supporting the Law Judge's decision to reject Dr. Syptak's opinion.

Finally, the undersigned believes that Law Judge duly gave the opinion of Dr. El-Bogadadi the credit it was due. In January 2011, Dr. El-Bogadadi opined that plaintiff would be unable to perform full-time competitive employment because of her lupus, and he relied on plaintiff's Crohn's disease, diabetes, and seizure disorder as making management of her condition difficult. (R. 887-894.) He opined that plaintiff was unable to sit, stand, or walk for a full 8-hour workday; could only occasionally lift or carry five pounds or less; would need to take 8-10 unscheduled breaks a day lasting 45 minutes; and would likely miss more than three days of work per month. (*Id.*)

The Law Judge gave little weight to Dr. El-Bogadadi's opinion for two reasons. First, he found that it was not supported by the longitudinal record because that record did not reflect significant ongoing symptoms of lupus. (R. 56.) Second, the Law Judge noted that none of Dr. El-Bogadadi's contemporaneous treatment notes were submitted to substantiate his opinion. (*Id.*) Substantial evidence

---

[19] Though some medical records referred to her hospitalizations during September through November 2009 as exacerbations of her Crohn's disease, the contemporaneous records from the hospital specifically refute that notion. (R. 619.) Furthermore, no colonoscopy or other test has revealed signs of Crohn's disease. (R. 590-592, 654-655, 694-706, 719-720, 1068-1072.)

14

supports the Law Judge's finding that plaintiff's lupus causes her only mild limitations. While Dr. El-Bogadadi pointed to plaintiff's photosensitivity, arthritis, seizures, anemia and leukopenia, and immunologic abnormality as her symptoms of lupus (R. 888-889), plaintiff's anemia and leukopenia generally were determined to be mild and controlled, and her seizures were found to have been intermittent and also controlled by medication. Furthermore, any impairment that plaintiff has in her left wrist appears to be the result of its fracture and possible cancer. Accordingly, Dr. El-Bogadadi's opinion is inconsistent with the longitudinal record, and the Law Judge's decision to assign it less weight is supported by substantial evidence.

Dr. Mays' March 17, 2010 Impairment Questionnaire, which plaintiff submitted for the first time to the Appeals Council, suffers some of the same shortcomings. Dr. Mays offers that plaintiff was incapable of substantial gainful activity, citing plaintiff's seizure disorder, diverticulitis/Crohn's disease, chronic headaches, and diabetes. (R. 1140.) The undersigned will, as required, consider the record as a whole, including this evidence, in determining whether the Commissioner's final decision is supported by substantial evidence, or whether good cause has been shown to remand. *Meyers v. Astrue*, 662 F.3d 700, 706-707 (4th Cir. 2011).

It is to be noted that all of Dr. Mays' contemporaneous treatment records were before the Law Judge in the first instance. (R. 663-669; 794-796.) Further, there is substantial evidence supporting the Law Judge's finding that plaintiff's seizure/pseudo-seizure disorder is not as severe as plaintiff has alleged. Dr. Mays points only to a single seizure in the six months preceding the Questionnaire, which the evidence reveals resulted from a temporary exacerbation of her diverticulitis. (R. 1141-1142.) The physician's opinion points to abnormal EEGs and MRIs in 2006 and 2007 but admits that plaintiff's most recent testing has been normal. (R. 1140.) Accordingly, Dr. Mays' opinion does not undermine the substantial evidence in support of the Law Judge's decision.

Ultimately, the Law Judge's determination of the weight given to the medical opinions in this case is supported by substantial evidence. While the undersigned may have given greater weight to the opinions of plaintiff's treatment providers, it is the Law Judge rather than the undersigned who is tasked

15

with considering and weighing the evidence of record. Additionally, Dr. Mays' opinion does not provide grounds to remand this case to the Commissioner given its inconsistencies with the record.

Finally, plaintiff argues that, if the Law Judge's RFC finding is not supported by substantial evidence, then the VE's testimony in response to the Law Judge's hypothetical questions was reversibly flawed. (Dkt. No. 10, at 25-26.) As plaintiff points out, the opinion of a vocational expert is relevant or helpful only to the degree it is offered in response to proper hypothetical questions which set out all of the claimant's impairments. *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). The undersigned has found on this record that the Law Judge's determination of plaintiff's RFC is supported by substantial evidence, thus rendering moot plaintiff's argument on this point.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, DENYING plaintiff's motion for summary judgment and motion to remand, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ [signature]
U.S. Magistrate Judge

11-20-2012
Date